# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2234
_____

Prairie Land Holdings, L.L.C.

*Petitioner*

v.

Federal Aviation Administration

*Respondent*

_____

Petition for Review of an Order of the
Federal Aviation Administration

_____

Submitted: January 17, 2019
Filed: March 25, 2019

_____

Before BENTON, MELLOY, and KELLY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Prairie Land Holdings, L.L.C. ("Prairie Land") petitions for review of an adverse order by the Federal Aviation Administration's Office of Dispute Resolution for Acquisition ("ODRA") regarding property Prairie Land leases to the Administration. Having jurisdiction under 49 U.S.C. § 46110, we affirm.

Appellate Case: 18-2234    Page: 1    Date Filed: 03/25/2019 Entry ID: 4769993

## I. Background

In 1997, Respondent Federal Aviation Administration ("FAA") entered into a lease agreement with an Arkansas company, Southern Steel and Wire Co. ("Southern"), for a "pole site" of 0.009 acre in Fort Smith, Arkansas (the "property"). The lease permitted the FAA to construct and maintain on the property a "Low Level Windshear Alert System," which is a series of weather stations used to monitor wind speed and direction near the airport. The lease lasted ten years, whereupon the FAA and Southern renewed it for an additional ten. The renewed lease is the subject of the current dispute, and the relevant portions are as follows:

1. <u>PREMISES</u>:

The Lessor hereby leases to the Government [the property].

. . . .

2. <u>TERM</u>:

To have and to hold, for the term commencing on October 1, 2007, and continuing through September 30, 2017, inclusive, PROVIDED, that adequate appropriations are available from year to year for the payment of rentals.

. . . .

8. <u>RESTORATION</u>:

The Government shall surrender possession of the premises upon the date of expiration or termination of this lease. . . .

. . . .

Appellate Case: 18-2234     Page: 2     Date Filed: 03/25/2019 Entry ID: 4769993

> 11. HOLDOVER:
>
> If after the expiration of the lease, the Government shall retain possession of the premises, the lease shall continue in force and effect on a month-to-month basis. Rent shall be paid in accordance with the terms of the lease, in arrears on a prorated basis, at the rate paid during the lease term. This period shall continue until the Government shall have signed a new lease with the Lessor, acquired the property in fee or vacated the leased premises.

In 2015, Southern sold the property and surrounding land to Prairie Land. Southern also assigned its lease with the FAA to Prairie Land. That same year, the Fort Smith City Planning Commission rezoned Prairie Land's newly acquired land for commercial development.

At the beginning of 2017, Prairie Land and the FAA began discussing the renewal of the lease. By August of that year, however, Prairie Land made it clear to the FAA that it no longer wanted to lease the property. Prairie Land wanted to develop the property into a commercial center, so it sent the FAA a "notice of termination," advising the FAA to vacate the premises by the expiration of the lease—September 30, 2017.

The FAA did not vacate, and in October 2017, Prairie Land initiated a contract dispute with the ODRA, an adjudicatory office of the FAA tasked with resolving such disputes. Prairie Land moved for summary judgment, claiming that under Arkansas law the FAA did not have a unilateral right to remain as a holdover tenant. The ODRA disagreed, and in April 2018, it issued an order denying Prairie Land's motion. The ODRA concluded that: (1) federal law, not Arkansas law, governed interpretation of the lease agreement; and (2) the plain language of the holdover provisions permitted the FAA to "holdover on the property until either a new lease is agreed upon or it acquires the property in fee." Prairie Land timely filed the instant petition for judicial review.

-3-

Appellate Case: 18-2234    Page: 3    Date Filed: 03/25/2019 Entry ID: 4769993

## II. Discussion

The sole issue on appeal is whether the ODRA erred in concluding that the FAA's continued occupancy of the property, without Prairie Land's consent and after the expiration and termination of the lease, is permitted by the lease agreement. We review the ODRA's nonfactual determinations under the Administrative Procedure Act, specifically 5 U.S.C. § 706. Friends of Richards-Gebaur Airport v. FAA, 251 F.3d 1178, 1184–85 (8th Cir. 2001). Under that statute, we may "hold unlawful and set aside agency action, findings, and conclusions" if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see also Friends of Richards-Gebaur Airport, 251 F.3d at 1185.

"Federal common law governs the interpretation and construction of a contract between the United States and another party." United States v. Basin Elec. Power Coop., 248 F.3d 781, 796 (8th Cir. 2001); see also Boyle v. United Tech. Corp., 487 U.S. 500, 504 (1988) ("[O]bligations to and rights of the United States under its contracts are governed exclusively by federal law."). We look to state law for guidance in defining the contours of the federal common law, though, unless "a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law[,]' . . . or the application of state law would 'frustrate specific objectives' of federal legislation." Boyle, 487 U.S. at 507 (first alteration in original) (citations omitted). In Arkansas, "[t]he first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended." Wal-Mart Stores, Inc. v. Coughlin, 255 S.W.3d 424, 429 (Ark. 2007) (citation omitted). A reviewing court "must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning." Id. The court is also to gather the parties' intention from "the whole context of the agreement," not merely "from particular words and phrases." Id.

Appellate Case: 18-2234    Page: 4    Date Filed: 03/25/2019 Entry ID: 4769993

Here, the lease clearly establishes a ten-year term for its duration. Upon the expiration of that term or termination of the lease by the FAA,[1] the lease obligates the FAA to "surrender possession of the premises" to Prairie Land. However, the lease qualifies that surrender language in paragraph 11, where it anticipates the FAA "retain[ing] possession of the premises" after "the expiration of the lease." In such an event, the lease is to "continue in force and effect on a month-to-month basis," with the FAA paying rent at the same rate and time established by the lease, "until the [FAA] shall have signed a new lease with [Prairie Land], acquired the property in fee or vacated the leased premises." Surrendering possession is thus left to the FAA's discretion in a holdover situation.

Based on these terms, we conclude that the FAA's continued occupancy of the property is permitted. The FAA has retained possession of the premises after the expiration of the lease. It has not signed a new lease with Prairie Land, acquired the property in fee, or vacated the leased premises. Therefore, under the plain language of the lease, the lease continues in full effect, and the FAA is fully within its rights to continue possessing the property. The ODRA did not err in concluding the same.

---

[1]Regarding termination, the lease provides:

7. CANCELLATION:

The Government may terminate this lease, in whole or in part, if the Real Estate Contracting Officer (RECO) determines that a termination is in the best interest of the Government. The RECO shall terminate by delivering to the Lessor a written notice specifying the effective date of the termination. The termination notice shall be delivered by registered mail, return receipt requested and mailed at least180 [sic] days before the effective termination date.

There is no reciprocal provision permitting Prairie Land to unilaterally terminate the lease.

Appellate Case: 18-2234    Page: 5    Date Filed: 03/25/2019 Entry ID: 4769993

Prairie Land argues that our interpretation ignores the nature of a fixed-lease term and conflicts with basic principles of contract interpretation. Prairie Land insists that our interpretation: (1) does not comport with the plain language of the surrender provision; (2) renders the lease term and restoration provisions superfluous; and (3) unreasonably reconciles the FAA's duty to vacate and the holdover provision. We disagree. Our interpretation recognizes the unique nature of the contract at issue, looking at "the whole context of the agreement" and not merely particular words or phrases. Wal-Mart Stores, 255 S.W.3d at 429. The FAA is no ordinary tenant, and the purpose of the lease is atypical. Instead of leasing the property for residential or commercial purposes, the FAA is leasing the property for long-term public safety reasons. The FAA thus contracted with Southern in such a way as to minimize interference with its operations[2] and the possibility of being forced to relocate against its wishes, and the plain language reflects that. We see no superfluity in our construction of the lease, nor do we think that our reading unreasonably harmonizes the various terms of the lease.[3]

---

[2]For instance, the lease provides:

9. <u>INTERFERENCE WITH GOVERNMENT OPERATIONS</u>:

The Lessor agrees not to erect or allow to be erected on the leased property or on adjacent property of the Lessor, any structure or obstruction of whatsoever kind or nature that may interfere with the proper operation of the facilities installed by the Government under the terms of this lease unless consent hereto shall first be secured from the Government in writing.

[3]We express no opinion as to whether Prairie Land may have some other remedy in the event the FAA holds over for an unreasonable period of time, refuses to negotiate in good faith for a lease extension, or unreasonably delays commencement of condemnation proceedings.

### III. Conclusion

Accordingly, we deny Prairie Land's petition for review.

KELLY, Circuit Judge, dissenting.

As I read the lease, the holdover provision's conditional language ("*If* after the expiration of the lease, the Government shall retain possession of the premises . . ." (emphasis added)) explains what happens once the FAA becomes a holdover tenant, but it is silent as to *how* the holdover tenancy may be established in the first place. The FAA interprets this silence as allowing it unfettered discretion to become a holdover tenant at the end of the lease. Given the lease's important public safety purpose, this interpretation may be reasonable. But in my view, it would be just as reasonable to interpret this silence as calling for application of the common-law understanding of holdover tenancies. And at common law, a tenant becomes a holdover tenant only when the "landlord consents to [the] tenant's remaining in possession of the leased premises after the expiration of the term." 49 Am. Jur. 2d Landlord and Tenant § 289.

Because the lease's holdover provision "is fairly susceptible to more than one equally reasonable interpretation," it is ambiguous as a matter of law. Yancy v. Hunt, 547 S.W.3d 116, 121 (Ark. Ct. App. 2018) (quoting Spann v. Lovett & Co., 389 S.W.3d 77, 88 (Ark. Ct. App. 2012)). As a result, I would remand the case to the ODRA for further proceedings. See United States v. Seckinger, 397 U.S. 203, 216 (1970) (holding that ambiguous contractual provisions should be construed against the drafter, even if the drafter is the government); Hanners v. Giant Oil Co. of Ark., Inc., 284 S.W.3d 468, 473 (Ark. 2008) ("Where an ambiguity is found within the contract, parol evidence may be admitted . . . to prove an independent, collateral fact about which the written contract was silent."). Accordingly, I respectfully dissent.

_____